| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 1/23/20 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA      :

    - against -      :

RANDY TORRES, et al.,      :

             Defendants.      :

------------------------------------X

16 CR 809 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Trial in the above-captioned matter is scheduled to begin before this Court on February 4, 2020. Before the Court are the motions in limine filed by the Government and by defendants Randy Torres ("Torres"), Walston Owen ("Owen"), and Charles Ventura ("Ventura," and together with Torres and Owen, "Defendants"). For the reasons below, the Court GRANTS in part the motions by the Government and reserves judgment in part, and DENIES in part and DENIES AS MOOT in part the motions by Defendants.

## I.  BACKGROUND

Torres has filed a motion seeking to preclude the Government from admitting co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)") unless the Government immediately provides Defendants with notice of such statements. (See "Torres Motion," Dkt. No. 394, at 1.) Torres also requests that the

Government immediately inform Defendants of any social media statements that will be offered at trial. (Id.)

Ventura has filed four motions. In the first of these, he seeks to preclude (1) testimony that Ventura was on parole in December of 2017, (2) evidence that Ventura was stabbed on August 11, 2014, and (3) evidence related to Ventura's state conviction for criminal possession of a weapon in 2009; Ventura also requests that the Government disclose an exhibit list and copies of all exhibits 30 days before trial. (See "Ventura August 6 Motion," Dkt. No. 312.) In his second motion, filed under seal because it relates to evidence classified as "Attorney's Eyes Only" by the operative protective order, Ventura seeks to preclude a tape recording of a phone call made from an individual incarcerated on Rikers Island. (See "Ventura August 15 Motion"; see also "Protective Order," Dkt. No. 32; "Ventura Protective Order," Dkt. No. 97.) Ventura's third motion supplements his August 15 Motion and was also filed under seal for the same reason. (See "Ventura December 23 Motion.") In Ventura's fourth motion, he seeks to preclude testimony of officers identifying Ventura as the individual in a surveillance video. (See "Ventura December 28 Motion," Dkt. No. 405.)

Owen filed a motion seeking to preclude the admission of certain uncharged acts of violence, including two dismissed

2

arrests of Owen (on July 3, 2015 and July 25, 2015) and a dismissed case in which he was arrested on November 9, 2008. (See "Owen Motion," Dkt. No. 396, at 4-6.[1]) Owen requests that the Government be ordered to provide to the defense a list of which acts of violence the Government will seek to introduce at trial. (Id. at 2.) Owen also seeks to preclude evidence of the murders of Victor Chafla ("Chafla") and Nestor Suazo ("Suazo"). (Id. at 6.) Last, Owen requests to join the Torres Motion regarding co-conspirator statements as it applies to Owen. (Id. at 7.)

The Government filed its own motion in limine on December 30, 2019.[2] (See "Government Motion," Dkt. No. 395.) The Government Motion seeks a ruling on the admissibility of certain co-conspirator statements, the murders of Chafla and Suazo, and Torres's alleged flight from prosecution.

---

[1] The Owen Motion is not paginated. Page numbers cited in this Decision and Order refer to the page numbers of the PDF filed on ECF or otherwise submitted to the Court.

[2] Before trial was rescheduled for February 4, 2020, it was scheduled to start on September 23, 2019. In advance of that date, the Government filed several letters under seal (the "Government September 28, 2018 Letter," the "Government June 4 2019 Letter," and the "Government August 15 2019 Letter") requesting preliminary rulings on certain matters relating to the existence of the charged enterprise. In response to the Court's request to clarify the relief sought by the Government, the Government submitted a letter indicating that it intended to prove evidence of the acts described in these submissions, and that the submissions were meant merely to provide notice to the Defendants of the Government's intent. ("Government August 22 2019 Letter," Dkt. No. 339.) Because the Government did not seek relief, and because many of the acts and other issues raised in these earlier letters are raised again by the motions in limine filed by the Defendants and the Government, the Court will not issue a ruling specifically as to the Government September 28, 2018 Letter, June 4 2019 Letter, August 15 2019 Letter, and August 22 2019 Letter.

Defendants have all filed motions in opposition to the Government Motion or in opposition to the Government's letter to counsel pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). (See "Torres Opposition," Dkt. No. 421[3]; "Owen Opposition," Dkt. No. 430; and "Ventura Opposition," Dkt. No. 424.) The Government responded to the Defendants' motions on January 10, 2020 (see "Government Opposition," Dkt. No. 420), and also filed a reply in further support of the Government Motion. (See "Government Reply," Dkt. No. 427.) The Court has not received replies from any of the Defendants, and the time to reply has now expired. (See Dkt. No. 359.)

## II.  LEGAL STANDARD

In ruling on the parties' motions described above, the Court is mindful of several applicable legal principles.

First, it is well-settled law that in actions involving charges of conspiracy, the Government may introduce at trial certain out-of-court statements made by defendants and their co-conspirators. See, e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).

Second, Rule 404(b) prohibits the introduction of evidence of crimes, wrongs, or other acts "to prove a person's

---

[3] The Torres Opposition is not paginated. Page numbers cited in this Decision and Order refer to the page numbers of the PDF filed on ECF or otherwise submitted to the Court.

character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(1). Nevertheless, such evidence "may be admissible" for other purposes, such as to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). Evidence of an uncharged crime is not subject to the Rule 404(b) analysis, however, if it (1) "arose out of the same transaction or series of transactions as the charged offense," (2) "is inextricably intertwined with the evidence regarding the charged offense," or (3) "is necessary to complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (alterations omitted)). Evidence is "inextricably intertwined" if it is "necessary to understand the charged transaction." United States v. Stein, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007). Such evidence need not "directly establish an element of the offense charged," but rather, it can "provide background" for the alleged events, and it may be admitted to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1553,

1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d
1380, 1388 (2d Cir. 1988)).

In conspiracy cases, specifically, evidence of other
crimes committed by defendants or coconspirators may be
admitted "to inform the jury of the background of the
conspiracy charged, to complete the story of the crimes
charged, and to help explain to the jury how the illegal
relationship between the participants in the crime
developed." United States v. Williams, 205 F.3d 23, 33-34 (2d
Cir. 2000) (quoting United States v. Pitre, 960 F.2d 1112,
1119 (2d Cir. 1992)); see also United States v. Romero-
Padilla, 583 F.3d 126, 130 (2d Cir. 2009) (per curiam)
("Although the evidence did not concern the charged
conspiracy, it was relevant background evidence inasmuch as
it corroborated the charge that [a coconspirator] and [the
defendant] were partners during the charged
conspiracy . . . .").

Third, where a prior conviction does not involve conduct
"any more sensational or disturbing" than the charged
offenses, the Court may find that its introduction under Rule
404(b) is not more prejudicial than probative. United States
v. Sanchez, 518 F. Supp. 2d 615, 616 (S.D.N.Y. 2007).

Finally, the Court notes that rulings on motions in
limine are preliminary and may be subject to change as the

case unfolds. See Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

### III. **DISCUSSION**

A. Timing of Disclosures

The Government provided notice to defense counsel via a series of letters filed under seal (see Government September 28, 2018 Letter; Government June 4 2019 Letter; and Government August 15 2019 Letter) regarding certain acts of violence that the Government intended to prove at trial. Owen argues that the Government should be required, within thirty days of trial, to provide a list of exactly which acts of violence it will seek to introduce at trial. (Owen Motion at 2.) Ventura separately requests that the Government disclose an exhibit list and copies of all exhibits in the same timeframe. (Ventura August 6 Motion at 3.) The Government opposes Owen's request. (Gov. Opposition at 6.) The Court finds that there is no basis for either request, particularly given the letters mentioned above.

B. Co-Conspirator Statements

The Government has charged Defendants with participating in a racketeering conspiracy relating to their alleged participation in the activities of a street gang known as the Rollin' 30s (the "Rollin' 30s" or the "Enterprise"). The Government seeks to admit certain statements from "other

7

members or affiliates of the Rollin' 30s" as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)"). (Gov. Motion at 1.) The Government describes three such categories: (1) statements made by members or associates of the Rollin' 30s in the lead up to or during acts committed as part of the Enterprise, (2) statements made by members or associates of the Rollin' 30s about acts committed as part of the Enterprise, and (3) statements made by members or associates of the Rollin' 30s about the status of other members of the conspiracy or rival gangs, or the history, practices, or leadership structure of the Rollin' 30s.

Under Rule 801(d)(2)(E), a statement is not hearsay if offered against an opposing party and made by the party's co-conspirator "during and in furtherance of the conspiracy." The Court must make two findings by a preponderance of the evidence. First, "that a conspiracy existed that included the defendant and the declarant." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). "The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged," id., but it is not enough if the two are associated in "some *other* venture." United States v. Russo, 302 F.3d 37, 44 (2d Cir. 2002) (emphasis added). It is enough that the conspiracy between

the declarant and the defendant is "factually intertwined" with the charged offenses. United States v. Stratton, 779 F.2d 820, 829 (2d Cir. 1985).

Second, the Court must find "that the statement was made during the course of and in furtherance of that conspiracy." Gigante, 166 F.3d at 82. "To be in furtherance of the conspiracy, a statement must be more than a 'mere narrative' description by one coconspirator of the acts of another. Rather, the statements must be such as to prompt the listener -- who need not be a coconspirator -- to respond in a way that promotes or facilitates the carrying out of a criminal activity. . . . [S]tatements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." United States v. Maldonado-Rivera, 922 F.2d 934, 958-59 (2d Cir. 1990) (internal citations and alterations omitted).

The Court finds that statements that properly fall within these three categories described by the Government will likely be admissible as co-conspirator statements. That is, assuming the Government can show that these statements were made during the course of and in furtherance of the

conspiracy, in accordance with how that principle is applied in the Second Circuit, the statements will be admissible.

With respect to the first category, statements made in the lead-up to (or during) certain actions taken by the enterprise will be admissible insofar as they were intended "to promote or facilitate" the goals of the conspiracy. United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994). This includes the conversations regarding the status of a cooperating witness, referred to as CW-2, within the Rollin' 30s, a matter that threatened (and sparked conversation about) the "trust and cohesiveness" among members of the conspiracy. United States v. Simmons, 923 F.2d 934, 945 (2d Cir. 1991), abrogated on other grounds by Richardson v. United States, 526 U.S. 813 (1999).

With respect to the second category, statements about acts committed in the course of the racketeering conspiracy will generally be admissible if they are designed to "apprise a co-conspirator of the progress of the conspiracy," United States v. Rahm, 813 F.2d 31, 36 (2d Cir. 1987), as, for example, the conversations among members of the Rollin' 30s regarding the Chafla and Suazo murders. Following the accidental shooting of Chafla, a cooperating witness referred to as CW-3 spoke with his brother, a member of the Rollin' 30s who was incarcerated at the time, about the shooting;

10

this conversation would be admissible as a statement designed to keep a coconspirator apprised of the conspiracy's progress. Rahm, 813 F.2d at 36. CW-3's conversation with Owen and Feliz following an attempted revenge shooting by a rival gang member, where Owen updated CW-3 on the conflict, would also be admissible for the same reason, as is Feliz's conversation on Facebook with an individual named "Bkricc Lohc." See Simmons, 923 F.2d at 945 ("The co-conspirators' discussions of [the] brutal murder, and the reasons for it, may well have served to promote the criminal activities of the [enterprise] by enforcing discipline among its members . . . [and] promot[ing] cohesiveness . . . .").

One example of a statement in the second category that merits special consideration is the phone call between Victim-1 and an individual known as Katchee. Based on the transcript provided, the Court is satisfied that Victim-1 was not merely providing a narrative to Katchee, Maldonado-Rivera, 933 F.2d at 958, but rather apprising him on significant events in the course of the conspiracy. While parts of the recording are not relevant, the Court agrees that the Government may admit the portion in which Victim-1 identifies himself as a member of the Silent Murder Gangster Crips (according to the Government, part of the Rollin' 30s), because his statement identifies him as a co-conspirator.

Russo, 302 F.3d at 46 ("[T]he declarant's statement furthered the maintenance of the syndicate by giving associated persons information about its membership."); see also Bourjaily v. United States, 483 U.S. 171, 178-79 (1987) (courts may consider hearsay in making factual determinations for the purposes of ruling on admissibility under Rule 801(d)(2)(E)). Torres's argument that this statement is irrelevant therefore fails. Similarly lacking legal support is Ventura's argument that the Government must establish a specific conspiracy between the defendant and the declarant. See Gigante, 166 F.3d at 82. While Defendants are correct that "[a]n association between the defendant and the declarant in some other venture -- and in particular a general association between them in the Mafia -- will not suffice," Russo, 302 F.3d at 44, the Government has alleged more than just a general association here.

In addition, Torres and Ventura both oppose the admission of the portion of the same call in which Victim-1 discusses his alleged shooting by Ventura. (Ventura December 23 Motion at 2; Torres Opposition at 4-5.) Victim-1's statement was made in furtherance of the conspiracy, as the call was intended to apprise another member of the conspiracy of a significant event (the targeting and shooting of a rival). The Court finds that this part of the call is

12

admissible as a co-conspirator statement, provided the Government demonstrates that any potential hearsay within hearsay (such as Victim-1's recounting of what he was told about his shooting) is either not hearsay or falls under a hearsay exception. Finally, for similar reasons, the Court rejects Torres's and Ventura's contention that the call is inadmissible because it contains speculation.

With respect to the third category, the Government seeks admission of testimony about the Rollin' 30s pertaining to the group's ranking system, code words, and history. None of the Defendants has opposed the Government's motion with respect to these statements. (E.g., Torres Opposition at 3 (indicating that "having an alleged member of the Rollin' 30s explain codes, rules, meetings and status to other newer members, generally, would satisfy the requirements under Rule 801[(d)](2)(E)").) In any event, the Court is persuaded that such statements will generally be admissible as coconspirator statements. See Russo, 302 F.3d at 46-47 ("The operation of such a syndicate requires that information be passed among interested persons, advising them of the membership and the hierarchy. . . . One of the objectives that members of a criminal organization share as co-conspirators is the transmission of information regarding the organization's membership."). Alternatively, the Government may seek to

admit some of these statements merely to provide context or render other statements intelligible, in which case they would not be admitted for truth, and thus not hearsay. United States v. Rowland, 826 F.3d 100, 115 (2d Cir. 2016); United States v. Guzman, 754 F.2d 482, 487 (2d Cir. 1985).

The Court notes that when this kind of evidence is introduced through a fact witness who, as to some issues, may also be qualified as an expert, such as a case agent or another law enforcement officer, it can be fraught with the danger that in the role of expert the witness will stray into summarizing the facts, rather than helping the Court and the jury to understand them, thereby providing a "shortcut[] to proving guilt." United States v. Mejia, 545 F.3d 179, 190 (collecting cases); see also United States v. Escobar, 462 F. App'x 57, 61-62 (2d Cir. 2012). That danger is of course lessened when such evidence is introduced by testimony of a cooperating witness. The Court is nevertheless mindful of the requirement that each statement the Government seeks to introduce must further the objective of the conspiracy -- by, for example, fostering cohesion or promoting criminal activity -- before the Government can use the statement to explain code words, rules, leadership structure, or other similar testimony.

The Court agrees, however, that the Government's representative statements set forth in its Motion constitute examples of how such statements might be admissible, such as the Facebook conversation between Owen and "Bukc Rolla." (Gov. Reply at 2.) This conversation, which shows an attempt to strengthen ties between members of the Rollin' 30s who do not know each other, represents an example of how some statements in the Government's third category "foster trust and cohesiveness." <u>Maldonado-Rivera</u>, 922 F.2d at 959. For that reason, Torres's objection that the communication is purely social is not persuasive. (Torres Opposition at 3.)

In sum, the Court grants the Government's Motion with respect to the three categories of statements described above, provided, of course, that each statement to be admitted meets the test for Rule 801(d)(2)(E). Defendants are able to object to the admission of particular statements as not properly within one of these three categories, but the Court rejects their arguments regarding the specific statements discussed in the Government's Motion.

Finally, Torres requests that the Government "immediately" identify all coconspirator statements. (Torres Motion at 1.) Torres provides no authority to justify his request, and the Court agrees such relief is not warranted based on the Government's position that it will produce its

exhibits sufficiently in advance of trial to permit the Defendants to object if they should so choose. (Gov. Opposition at 2.) The Court also notes that the Government produced the social media material in advance of the previous trial date, many months ago, further weighing against Torres's request. (Gov. Opposition at 2-3.)

C. Chafla and Suazo Murders

The Court agrees with the Government that the evidence of the Chafla and Suazo murders is admissible as direct proof of the charged enterprise. Where murder is one of the objects of the charged racketeering conspiracy, the Second Circuit has repeatedly upheld the admission of evidence of murders committed by members of the conspiracy even if the trial defendant did not participate. See United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) ("This court has held that proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise."); see also United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992) (holding that for all defendants except the two who were convicted only of wire and mail fraud, "evidence of [the RICO] acts is relevant to the RICO charges against each defendant," even though "each defendant in a RICO case may reasonably claim no direct participation in some of those acts"). The Court sees no reason to deviate

16

from this settled Second Circuit principle, and Defendants provide none.

Torres argues that the incident resulting in Suazo's death was intended to be a fight, not a shooting. The Government states that it is unaware of any evidence to support this claim. Regardless, the Court is persuaded that, even if Torres's version of events were true, such a planned assault on a rival member of the Rollin' 30s is admissible as evidence of the charged enterprise.

Ventura argues that the murders should not be admissible against him because he was not directly involved in the murders. The Court notes that the Government has agreed not to argue to the jury that Ventura was directly involved, but otherwise, the evidence is admissible as to Ventura because, again, it is direct evidence of the charged enterprise. The Government has also indicated that it will prove at trial Ventura's continued affiliation with and support for the Rollin' 30s after the murders, thereby demonstrating his continued agreement to participate in the racketeering conspiracy. At this point, Ventura cannot demonstrate sufficient prejudice to warrant a limiting instruction. See United States v. Diaz, 176 F.3d 52, 103 (2d Cir. 1999) (no substantial spillover prejudice where defendant was implicated in only one murder and his codefendants were

implicated in eight other murders, because "the evidence in dispute [was] relevant to the charges against all RICO defendants").

Finally, Owen argues that there is no evidence tying him to the Chafla murder (Owen Motion at 6), and Torres argues that there is no reliable, non-hearsay evidence tying him to the Suazo murder. (Torres Opposition at 8.) Under the controlling case law and principles described above, both of these arguments miss the mark. See Brady, 26 F.3d at 287 ("[P]roof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise."). If Torres wishes to object to the evidence on hearsay grounds, he may do so when the Government moves to introduce it. Furthermore, the Court is satisfied with the Government's preliminary explanation of how Owen and Torres are, in fact, tied to the two murders and will permit the Government to argue that such connections exist. (Gov. Opposition at 4-5; Gov. Reply at 3.) Owen's argument that the Suazo murder is somehow outside the scope of the racketeering conspiracy because it was spontaneous is meritless for similar reasons (Owen Motion at 6), as is Torres's argument that the Suazo murder did not further the conspiracy because "disputes like this are supposed to be dealt with differently." (Torres Opposition at 9.) Indeed, Defendants

have been charged with participating in a racketeering conspiracy in which murder was one of the objects of the conspiracy. The Government must prove that each of the Defendants agreed that a coconspirator would commit two or more racketeering acts. The evidence of the murders therefore goes directly to the charged crime. See 18 U.S.C. § 1962(c).

Thus, the Court will permit evidence of the Chafla and Suazo murders.

D. Prior Bad Acts

1. Owen's Prior Arrests

Owen argues that his November 9, 2008 and July 25, 2015[4] arrests for weapons charges should not be admitted either as direct evidence or pursuant to Rule 404(b) for three reasons, because: the charges were dismissed; there is no theory that the alleged crime facilitated the enterprise in any way; and evidence of the arrests is not necessary to prove the Government's case. (Owen Motion at 4-6; Owen Opposition at 3-4.) The Court agrees with the Government that the standard Owen urges upon the Court does not accurately state the law. Furthermore, the Court agrees that this evidence of previous crimes is admissible under Rule 404(b). The Court therefore

---

[4] The Court notes that the Owen Opposition gives the date of the second arrest as July 24, 2015, while the Government's briefing and the Owen Motion uses July 25, 2015. The Court uses the latter date but assumes both parties are referring to the same arrest.

grants the Government's motion regarding Owen's two arrests but notes that it will give a limiting instruction when the evidence is introduced, so as to avoid the risk of the jury using the arrests as evidence of propensity.

The Government urges that these two arrests are direct evidence of the racketeering conspiracy because Owen was "found to be with known members of the Rollin' 30s Enterprise who were in possession of multiple firearms." (Gov. Reply at 6.) The Government points out that the July 25, 2015 arrest occurred "in the midst of a series of violent acts perpetrated by the Rollin' 30s against Opposing Crews" (Gov. Reply at 6), and that the November 9, 2008 arrest "precede[d] the charged time frame . . . by a mere two months" (Gov. Opposition at 9), thereby demonstrating that the arrests are direct evidence of Owen's relationship with other members of the enterprise. (Gov. Opposition at 7.) The Court is not persuaded that the two arrests constitute direct evidence of the enterprise. Indeed, in arguing that Owen should not be permitted to show that these cases were dismissed, the Government points out that the state cases are "distinct and ultimately irrelevant." (Gov. Reply at 7.)

Nevertheless, the Court agrees that these two arrests are admissible under Rule 404(b). As the Second Circuit has routinely held, evidence of previous crimes is admissible

under Rule 404(b) "to explain how a criminal relationship developed" and "to help the jury understand the basis for the co-conspirators' relationship of mutual trust." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996). Here, as the Government points out, the evidence establishes, among other things, Owen's access to and lack of mistake or accident with regard to firearms possession. (Gov. Opposition at 8-9.) This applies to both his 2008 and 2015 arrests, contrary to what Owen argues (Owen Opposition at 3). United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) (prior acts admissible under Rule 404(b) even if "committed prior to the time charged in the indictment").

As noted above, Owen also argues that if these two arrests are admitted into evidence, he should be permitted to show that the cases were dismissed. Because the dismissal of these cases cannot serve as proof of innocence, see United States v. Rodriguez, 582 F. Supp. 2d 486, 487 (S.D.N.Y. 2008), Owen must point to some other reason to introduce the fact that the two cases were dismissed. He has not. The Court will deny his request without prejudice to renewing it at trial if Owen can demonstrate that evidence of dismissal would not confuse the jury and would serve a valid purpose beyond demonstrating his innocence as to the two arrests. See United States v. Burrell, 43 F. App'x 403, 406-07 (2d Cir. 2002)

("[A] judgment of acquittal is not generally admissible to rebut inferences that may be drawn from other evidence, and . . . [does] not establish that [the defendant] was not guilty." (internal citations omitted)).

Finally, Owen argues that the arrests are highly prejudicial, and that the prejudice outweighs the probative value. However, it is well-established that "other acts" evidence is not unfairly prejudicial if it is neither more sensational nor more disturbing than the charged crimes. Williams, 205 F.3d at 34 (finding "no undue prejudice under Rule 403 [where] the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction"). Such is the case here.

Owen also moves to preclude evidence of his July 3, 2015 arrest in a vehicle with certain other members of the Rollin' 30s. (Owen Motion at 5.) Because the Government has represented that it will not introduce evidence of this arrest in its case in chief, but only to the extent the defense opens the door to this testimony, such as by Owen denying that he associated with the other individuals in the car, the Court will deny Owen's request as moot. (Gov. Opposition at 9-10.)

2. Ventura's 2009 State Conviction

Ventura moves to preclude evidence of a state conviction from 2009 for possession of a weapon. (Ventura August 6 Motion

22

at 3.) Ventura argues the conviction is unrelated to the charges in the indictment, and the Government responds that the facts underlying the conviction demonstrate that it directly related to the rivalry between the Rollin' 30s and the Bronx River gang. (Gov. Opposition at 10-11.) Activities undertaken in service of a rivalry between the Rollin' 30s and opposing gangs are clearly relevant to proving the existence of the Enterprise. Because the Government has offered to show that Ventura's 2009 conviction is direct evidence of one of the charges at issue here, the conviction is admissible. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (evidence not subject to Rule 404(b) "if it is inextricably intertwined with the evidence regarding the charged offense" (quoting Gonzalez, 110 F.3d at 942)).

E. Ventura's Stabbing

Ventura moves to exclude evidence that he was stabbed on August 11, 2014. (Ventura August 6 Motion at 2.) He argues that the stabbing is not connected to the charged conspiracy and is highly prejudicial. The Government counters that the evidence is direct evidence of Count One, which charges Defendants with racketeering conspiracy. According to the Government, Ventura was attacked outside a liquor store while with other members of the Rollin' 30s. A cooperating witness referred to as CW-1 will, the Government proffers, testify

that he and others informed Owen of the attack, which precipitated a retaliatory shooting by Owen. (Gov. Opposition at 11-12.) Assuming the evidence at trial proceeds in accordance with the Government's statements in its briefing, the Court agrees that Ventura's stabbing is direct evidence of the charged racketeering conspiracy, and will deny Ventura's motion.

F. Torres's Flight from Prosecution

The Government argues that evidence regarding Torres's flight from prosecution is admissible as direct proof of the conspiracy charged in Count One (because it is evidence of Torres's consciousness of guilt) and, separately, admissible as corroboration of planned cooperating witness testimony regarding the close ties between the Rollin' 30s in Florida and those in New York. The Court addresses each argument in turn.

While the Government first argues that evidence of Torres's flight is "direct proof of the conspiracy charged in Count One," it does not explain how his flight is *direct* proof of guilt, and indeed, the weight of case law suggests that a defendant's flight is properly considered circumstantial evidence, if admitted at all. United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) ("It is well-settled that flight

24

can, in some circumstances, evidence consciousness of guilt.").

Even when evidence of flight is admissible as evidence of a defendant's consciousness of guilt, the admission is not automatic. While the Government relies on Amuso to suggest that the evidence must pass only a "threshold inquiry of relevance," Amuso is inapposite; in that case, the flight was direct evidence of the crimes in the indictment, which "alleged that Amuso retained exclusive authority to authorize murders while he was a fugitive, that he ordered at least five murders while on the run, and that he continued to press for the completion of murder contracts he ordered before he became a fugitive." United States v. Amuso, 21 F.3d 1251, 1258 (2d Cir. 1994). The evidence of his flight was thus "necessary to the jury's complete understanding of how [the defendant] conducted his business while he was a fugitive." Id.

In cases where, as here, the defendant's flight is evidence only of consciousness of guilt, it must meet the four-step test set forth in Al-Sadawi, which requires that the evidence support four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4)

from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." 432 F.3d at 424. These requirements "ensure[] that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." Amuso, 21 F.3d at 1260.

The Government has not made this showing. It relies solely on the fact that Torres had just been named as the lead defendant in the S3 Indictment and abandoned his cell phone and his job. (Gov. Motion at 37.) The Government has not presented facts indicating the precise timing of Torres's flight in relation to his indictment and what Torres may have known about that indictment at the time he fled that would suggest a causal connection. Accordingly, the existing record is not enough to tie Torres's flight to an inference of "actual guilt of the crime charged." Al-Sadawi, 432 F.3d at 424.

The Government argues in the alternative that Torres's flight is admissible under Rule 404(b) because it "is key corroboration for the cooperating witnesses" who "will testify regarding the close ties shared between Rollin' 30s in Florida and those in New York City." (Gov. Motion at 37.) The Government relies on cases indicating that Rule 404(b) testimony may be used to corroborate "crucial prosecution

testimony." (Gov. Motion at 38 (quoting United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987)).) It is far from clear how evidence of close ties between the Rollin' 30s in Florida and those in New York City is even relevant to the charges in the Indictment, much less "crucial." Torres's flight is thus not admissible under Rule 404(b).

Nevertheless, because the Government has indicated it uncovered "additional evidence" related to Torres's flight, the Court will reserve judgment on the issue to permit the Government to present any additional evidence it has that Torres's flight meets the four-step test described above, assuming this additional evidence is otherwise admissible. (Gov. Reply at 11-12 n.6.)

Finally, the Court agrees with the Government's view that, in the event evidence of his flight is admitted, Torres may not automatically admit his alternative explanation for his flight, insofar as he wishes to bring in his out-of-court statements to others on social media or to prison officials. (Torres Opposition at 11.)   Such out-of-court statements would be inadmissible hearsay under Rule 801. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Torres may, however, request a limiting

instruction on this point. See United States v. Mundy, 539 F.3d 154 (2d Cir. 2008) (discussing jury instructions on flight).

G. Ventura's Motions on Law Enforcement Testimony and Parole

The Government indicates (Gov. Opposition at 14) that it will not seek to introduce evidence identifying Ventura on certain surveillance videos. Ventura's motion on this evidence is therefore moot. (Ventura December 28 Motion.) Also moot is Ventura's motion to preclude evidence that he was on parole in September 2017, at the time of Victim-1's shooting, because the Government has indicated that the parties have reached a stipulation on the relevant evidence. (Ventura August 6 Motion at 1-2; Gov. Opposition at 14.)

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion in limine (Dkt. Nos. 395 and 427) of the Government ("Government Motion") to admit evidence of the murders of Victor Chafla and Nester Suazo and to admit co-conspirator statements as discussed above is **GRANTED**; and it is further

**ORDERED** that the motion in limine (Dkt. Nos. 312 and 405) filed by defendant Charles Ventura ("Ventura Motion") to preclude evidence that Ventura was on parole in December 2017

28

and to preclude evidence of the identification of Ventura on video is **DENIED** as moot; and it is further

ORDERED that the Ventura Motion is **DENIED** in all other respects; and it is further

ORDERED that the motion in limine (Dkt. No. 394) filed by defendant Randy Torres ("Torres") to bar admission of coconspirator statements is **DENIED;** and it is further

ORDERED that the motion in limine (Dkt. No. 396) of defendant Walston Owen ("Owen Motion") to preclude evidence of his arrest on July 3, 2015 is **DENIED** as moot; and it is further

ORDERED that the Owen Motion is **DENIED** in all other respects. The Court will defer ruling on the Government Motion to admit evidence of Torres's flight from prosecution.

**SO ORDERED.**

Dated: New York, New York
      23 January 2020

VICTOR MARRERO
U.S.D.J.